*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ADVANCED ORTHOPEDICS AND SPORTS
MEDICINE INSTITUTE, on behalf of PATIENT
MS,

          Plaintiff,

v.

ANTHEM BLUE CROSS LIFE AND HEALTH
INSURANCE COMPANY, ANTHEM BLUE
CROSS d/b/a BLUE CROSS OF CALIFORNIA,
and CENTRAL GARDEN & PET, AND
HORIZON HEALTHCARE SERVICES, INC.
d/b/a HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY,

          Defendants.

---

Civil Action No. 20-13243 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

Plaintiff Advanced Orthopedics and Sports Medicine Institute ("Plaintiff" or "Advanced"), on behalf of patient M.S., filed this suit against defendants Anthem Blue Cross Life and Health Insurance Company, Anthem Blue Cross d/b/a Blue Cross of California ("Anthem"), Central Garden & Pet ("Central"), and Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon") (collectively, "Defendants"), asserting claims, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq.*, for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B); denial of full and fair review under 29 U.S.C. § 1132(a)(3); breach of fiduciary duty under 29 U.S.C. § 1132(a)(3); and claim for relief under 29 U.S.C. § 1132(a)(3)(B).[1]

---

[1] Plaintiff brings its claims pursuant to 29 U.S.C. § 1132, which provides for civil enforcement of ERISA's provisions.

Presently before the Court are Defendants' separate motions to dismiss Plaintiff's Third Amended Complaint ("TAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 57 and 58.) For the reasons set forth below, the motion filed by Horizon is **GRANTED**, the motion filed by Anthem is **GRANTED**, and the motion filed by Central is **GRANTED** in part and **DENIED** in part. First, Count II is dismissed as to all Defendants because 29 U.S.C. § 1133 does not confer a private right of action. As to Horizon's and Anthem's motions, the remaining claims are dismissed because (1) neither Horizon nor Anthem is a proper party to Plaintiff's claim in Count I for benefits due under 29 U.S.C. § 1132(a)(1)(B), and (2) neither Horizon nor Anthem is a fiduciary for purposes of Counts III and IV. Finally, as to Central, its motion is denied as to Counts I, III, and IV.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from the TAC and assumed true for the purposes of this motion.

This case arises out of allegedly underpaid claims for benefits submitted by an out of network, out of service area, health care provider for complex surgical services rendered to M.S., a beneficiary under a health benefit plan sponsored by Central. Specifically, Plaintiff is a professional practice orthopedics group in Freehold, New Jersey. (TAC, ¶ 3.) Dr. Grigory Goldberg, M.D., a surgeon associated with Plaintiff, and Timothy Dowse ("Dowse"), a Physician Assistant working for Plaintiff, performed various spinal procedures on Advanced's patient, M.S. (*Id.* at ¶¶ 1, 5.) M.S. is a Plan beneficiary, and has provided an assignment of benefits to Plaintiff allowing Advanced to pursue any claims or causes of actions M.S. may have related to medical benefits or insurance reimbursement. (*Id.* at ¶¶ 7, 18.) Following the surgeries, Plaintiff submitted invoices on behalf of Dr. Goldberg in the amount of $190,138.25. (*Id.* at ¶ 68.) Of that amount, Anthem paid $7,172.36. (*Id.*) Plaintiff also submitted invoices on behalf of Timothy Dowse in the

amount of $93,982.00. (*Id.*) Of that amount, Defendants paid $776.29. (*Id.*) In both cases, Anthem, in its Explanation of Benefit Payments ("EOB") sent to Plaintiff, stated that, "This is the amount that exceeds the Maximum Allowed Amount." (*Id.* at ¶ 71.) Plaintiff submitted separate appeals for Dr. Goldberg and Dowse's claims on July 10, 2017. (*Id.* at ¶ 76.) Anthem responded to the appeals by paying an additional amount of $1,593.85 on Dr. Goldberg's claim. (*Id.*) Plaintiff again submitted a level two appeal of both claims, but it did not receive a response. (*Id.* at ¶¶ 77-78.)

Advanced filed its initial Complaint against Anthem and Central on September 24, 2020, seeking, among other things, benefits due under ERISA. (ECF No. 1.) Before Anthem and Central responded, Advanced filed its First Amended Complaint ("FAC") on March 1, 2021, again seeking benefits due and other relief afforded under ERISA. (ECF No. 19.) Anthem and Central moved to dismiss the FAC on March 15, 2021. (ECF No. 20.)

On October 18, 2021, this Court granted Anthem's and Central's motion to dismiss the FAC in its entirety. (ECF No. 25, "Prior Opinion".) In doing so, the Court concluded first that Anthem was not a proper party in this ERISA action because the FAC failed to adequately allege that Anthem was "the plan itself or a person who controls the administration of benefits under the plan." (*Id.* at 6.) Indeed, this Court concluded that Advanced gave "short shrift, and fail[ed] to offer any persuasive arguments" that Anthem actually had the requisite level of control over the Plan necessary to make it a proper defendant in an action seeking benefits and other relief under ERISA. (*Id.* at 7-9.) This Court also held that the FAC failed to adequately allege that Anthem was a fiduciary under ERISA or that Central breached any fiduciary duties owed to M.S. (*Id.* at 10-12.)

After this Court dismissed the FAC, Advanced filed the Second Amended Complaint ("SAC"), which added Horizon as a party. (ECF No. 28.) Defendants moved to dismiss the SAC

3

on March 16, 2022; however, before the motions were decided, Advanced filed the TAC on May 31, 2022. (ECF Nos. 43 and 55.)

The TAC, which includes additional allegations related to the administration of the Plan, pricing under the Plan, and Horizon's role in the claims process, asserts four claims against Defendants in connection with what it characterizes as "drastically underpaid claims for benefits submitted by an out of network, out of service area, health care provider for complex surgical services" rendered M.S., a beneficiary under a health benefit plan sponsored by Central: (1) failure to pay benefits in violation of 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) failure to provide a full and fair review of the claim in violation of 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1133 (Count II); (3) breach of Defendants' fiduciary duty under 29 U.S.C. § 1132(a)(3) by failing to administer the Plan in the best interest of the plan beneficiaries (Count III), and (4) unspecified "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B) (Count IV).

Specifically, as to the administration of the Plan, the TAC alleges that Central delegated the administration of the Plan, in part, to Anthem as "co-fiduciary." (TAC, ¶¶ 10, 22.) According to Plaintiff, the Plan provides that Central "has allocated to Anthem Blue Cross Life and Health Insurance Company, responsibility for administering the Plan's claim procedures. To the extent performance of Anthem Blue Cross Life and Health Insurance Company's obligations constitute fiduciary obligations under applicable law, Anthem Blue Cross Life and Health Insurance Company will be co-fiduciary." (*Id.* at ¶ 22.) In exercising their purported fiduciary functions, Plaintiff alleges that Central and Anthem "exercise discretionary authority to determine eligibility for benefits and to interpret and apply the terms of the Plan." (*Id.* at ¶ 24.) In this regard, the TAC claims that the Plan states that: "In exercising their fiduciary functions, the Plan fiduciaries have

the duty and full discretionary authority to determine eligibility for benefits and to interpret and apply the terms of the Plan." (*Id.*)

With respect to Horizon's role in the administration of the Plan, Plaintiff further alleges that both Horizon and Anthem are independent licensees of the Blue Cross Blue Shield Association ("BCBS"), and therefore, they participate in the BlueCard Program. (*Id.* at ¶ 29.) According to Plaintiff, under the BlueCard Program, Horizon and Anthem provide claims processing and adjudication services to out-of-state Blue Cross and/or Blue Shield Plans across the country through a single electronic network for claims processing and reimbursement. (*Id.*) The licensee for the jurisdiction in which the medical services take place is known as the "Host Blue." (*Id.* at ¶ 30.) As per the terms of the Plan, Plaintiff claims that the "Host Blue," here, is Horizon, since the medical services occurred in New Jersey, and it is responsible for "(a) contracting with its providers; and (b) handling its interactions with those providers." (*Id.*) According to the TAC, "[t]his arrangement is in place because the designated Anthem licensee defined under the Plan is not licensed or registered to administer benefits in New Jersey." (*Id.* at ¶ 31.) As such, Plaintiff emphasizes that the Plan explains: "Under the BlueCard® Program, when you receive covered services within the geographic area served by a Host Blue, the claims administrator will still fulfill the plan's contractual obligations." (*Id.* at ¶ 31.)

Finally, as to pricing for services rendered by non-participating providers outside the coverage area, Plaintiff alleges that the Plan provides in relevant part:

> For covered services rendered outside the Anthem Blue Cross service area by nonparticipating providers, claims may be priced using the local Blue Cross Blue Shield plan's non-participating provider fee schedule/rate or the pricing arrangements required by applicable state or federal law. In certain situations, the maximum allowed amount for out of area claims may be based on billed charges, the pricing used if the healthcare services had been obtained within the Anthem Blue Cross service area, or a special negotiated price.

(*Id.* at ¶ 37.) With respect to determining the maximum allowed amounts and member liability calculation, Plaintiff further alleges that the Plan states:

> When covered services are provided outside of Anthem Blue Cross's Service Area by nonparticipating providers, [Anthem] may determine benefits and make payment based on pricing from either the Host Blue or the pricing arrangements required by applicable state or federal law. In these situations, the amount you pay for such services as deductible or co-payment will be based on that allowed amount.

(*Id.* at ¶ 38.) Regarding pricing claims submitted by non-participating providers outside the coverage area, the Plan provides:

> When you receive covered services outside the Anthem Blue Cross Service Area and the claim is processed through the BlueCard Program, the amount you pay is calculated based on the lower of: [t]he billed charges for covered services; or [t]he negotiated price that the Host Blue makes available to the claims administrator.

(*Id.* at ¶ 39.) Thus, the TAC alleges that for covered services performed by non-participating providers outside of the coverage area, "claims may be priced using": (1) "the local Blue Cross Blue Shield plan's non-participating provider fee schedule/rate"; (2) "the pricing arrangements required by applicable state or federal law"; (3) "based on billed charges"; (4) "the pricing used if the healthcare services had been obtained within the Anthem Blue Cross service area"; or (5) "a special negotiated price." (*Id.* at ¶ 40.)

On July 1, 2022, Defendants filed their respective motions to dismiss the TAC. (ECF Nos. 57 and 58.) On August 1, 2022, Plaintiff file a joint opposition (ECF No. 59), and on August 26, 2022, Defendants filed their replies. (ECF No. 60 and 61.)

## II.   <u>LEGAL STANDARD</u>

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations omitted). Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 662. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 664. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* "This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" indeed, mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678. Moreover, a plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213.

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010), *cert. denied*, 565 U.S. 817 (2011). Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.   DISCUSSION

On the instant motions, Anthem and Horizon argue that they are not proper parties to a claim seeking benefits due under 29 U.S.C. § 1132(a)(1)(B), and further, Defendants argue that

Plaintiff's TAC fails to state a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3). I will address each of Defendants' arguments, in turn.

### A.   Count I: Failure to Pay Benefits Under § 502(A)(1)(B) of ERISA

*1.   Whether Anthem and Horizon Are Proper Parties*

As a threshold matter, Anthem and Horizon argue that they are not proper parties to a claim seeking benefits due under 29 U.S.C. § 1132(a)(1)(B). Under § 1132(a)(1)(B), a civil action may be brought by a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of his plan." According to the Third Circuit, the proper defendant in such an action is "the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan*, 311 Fed. Appx. 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)); *see also Graden v. Conexant Systems Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("In a 29 U.S.C. § 1132(a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only)."). In fact, the "defining feature of the proper defendant" for an ERISA benefits claim is whether the party "exercis[ed] control over the administration of benefits[.]" *Id.* This includes situations where the entity "had discretion to interpret the plan and make benefits determinations." *Professional Orthopedic Associates, Pa., Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 14-4731, 2015 WL 5455820, at *5 (D.N.J Sept. 16, 2015) (citing *Evans*, 311 Fed. Appx. at 558-59). "In contrast, if an employer authorizes a third party to process claims or determine eligibility but nonetheless retains the ultimate power to decide, at its discretion, disputed claims, that employer would be a proper defendant." *Woerner v. Fram Group Operations, LLC*, No. 12-6648, 2017 WL 1735683, at *2 (D.N.J. Apr. 27, 2017).

i.   *Anthem*

Anthem argues that it is not the Plan neither the plan administrator.[2] (Anthem Mov. Br.,

10.) To the extent that Plaintiff alleges that Anthem is the "claim administrator," Anthem contends

that it does not "fund, insure, or underwrite" the Plan. (*Id.* at 10-11.) Anthem also highlights that

it is not M.S.'s employer, and "there is no regulation that would ascribe liability to Anthem as "the

plan" in this context." (*Id.*) Further, according to Anthem, Plaintiff's allegation that Anthem should

be held liable as a "co-fiduciary" is without merit, because "such claims are only suitable against

the party 'with final authority to authorize or disallow a claim for benefits under the plan.'" (*Id.* at

11.) In sum, Anthem argues that Plaintiff advances claims for benefits due under the terms of the

M.S.'s Plan, which are funded and administered by Central Garden—not Anthem. (*Id.*) Thus,

Anthem stresses that "[w]hether Plaintiff interacted with Anthem, dialogued with Anthem, or

engaged in the claims adjudication process through the BlueCard program is immaterial." (*Id.*)

Based on the totality of the factual allegations contained in the TAC, I agree with Anthem's

position that it is not a proper party.

In response to Anthem's motion, Plaintiff argues that the TAC "clarif[ies] any uncertainty

[identified in the Court's Prior Opinion] regarding Anthem's role in making discretionary

choices," and as such, it has plausibly alleged that Anthem was responsible for management of the

Plan and exercised authority to interpret the Plan's terms in determining the administration of

benefits. However, despite this assertion, I find that Plaintiff relies on the same, albeit rephrased,

allegations that this Court previously considered when finding Anthem was not a proper party.

---

[2]     Under 29 U.S.C. § 1002(16), the Plan "administrator" is a person "specifically so designated by
the terms of the instrument under which the plan is operated" or, if none is designated, the "plan sponsor,"
or, if no sponsor is identified, a person designated by the Secretary of Labor. *See* 29 U.S.C. § 1002(16)(A).
A "plan sponsor" is the employer or employee organization that maintains the plan. 29 U.S.C. §
1002(16)(B).

(Advanced Opp., 5-9.) Indeed, the crux of Plaintiff's allegations remains that Anthem had discretion in the payment of claims because it made "arrangements with Horizon regarding a 'special negotiated price' or had to invoke "one of the fee schedules offered through Horizon's Host Blue network." (*Id.* at 8.) In this regard, Plaintiff argues that the Plan's terms for deciding non-participating out of service area claims include "several non-defined options." (*Id.* at 7) (citing TAC, ¶¶ 40-41.) According to Plaintiff, the payment of the claim at issue could have been assessed using the following methods: (1) "the local Blue Cross Blue Shield plan's non-participating provider fee schedule/rate"; (2) "the pricing arrangements required by applicable state or federal law"; "based on billed charges"; (3) "the pricing used if the healthcare services had been obtained within the Anthem Blue Cross service area"; or, (4) "a special negotiated price." (*Id.*) (citing TAC, at ¶ 40.) Plaintiff alleges that Anthem, as the claims administrator, decided how the claim would be priced by using one of the methods, and therefore, determined the payment amount. (TAC, ¶¶ 86-88.) Thus, Plaintiff claims that under the terms of the Plan, Anthem had "no choice but to use discretionary authority to determine the amount to be paid on this claim." (Advanced Opp., 7-8.)

In the Court's Prior Opinion, I addressed this same argument from Anthem, finding that Anthem was not a proper party based on the allegations of the initial Complaint. There, I acknowledged that courts must look beyond the mere title of "claims administrator" to determine whether an entity exercised control over a plan's administration. (Prior Opinion, 7.) However, I identified that the question, here, is "whether Plaintiff has sufficiently alleged that Anthem had such control over the Plan's benefits administration." (*Id.*) In granting Anthem's first motion to dismiss, I noted that Plaintiff's position that Anthem exercised control over the administration of benefits hinged on a single provision of the Plan which reads:

> When covered services are provided outside of Anthem Blue Cross's Service Area
> by non-participating providers, the claims administrator may determine benefits

and make payment based on pricing from either the Host Blue or the pricing arrangements required by applicable state or federal law. In these situations, the amount you pay for such services as deductible or co-payment will be based on that allowed amount. Also, you may be responsible for the difference between the amount that the non-participating provider bills and the payment the claims administrator will make for the covered services as set forth in this paragraph.

Construing this provision, I noted, however, that this is not indicative of discretion, but rather, it "*limits* Anthem's discretion to making payments based on the pricing arrangements either from the Host Blue or applicable state or federal law." (*Id.*) (emphasis in original).

Here, other than a few factual allegations that further explain what those various pricing arrangements were and the role of Horizon in those pricing arrangements, the TAC does not provide any additional allegations to demonstrate discretion or authority on the part of Anthem. Nor does the TAC introduce any other provision of the Plan, not previously considered by the Court, that confers discretion. Indeed, in opposition to Anthem's instant motion to dismiss, Plaintiff generally emphasizes Anthem's performance of garden variety ministerial tasks, which it claims shows discretion. For example, Plaintiff references allegations that Anthem determined the appropriateness of billing codes; reviewed challenged claims for benefits, and reviewed appeals. (*See* Advanced Opp., 6); *see also* TAC ¶¶ 26-27, 40-41, 61, 76-77. These activities, however, without more, do not establish that Anthem "exercised any discretionary authority … in administration of the [P]lan" and thus is not a fiduciary or a proper party to this action. *Confer v. Custom Engineering Co.*, 952 F.2d 34, 39 (3d Cir. 1991).

Moreover, upon closer examination of Plaintiff's allegations that Anthem had discretion in the payment of claims, I find that purported discretion not supported by the record. Based on the totality of the TAC's allegations, coupled with Plaintiff's own representations in its briefing, it is clear that Anthem did not possess unfettered discretion with respect to the payment of claims. Rather, Anthem's "decision-making" related to claim payment rests merely in its obligation to

select the most appropriate fee schedule and/or calculation methodology based on the particular provider. Indeed, Plaintiff's argument that Anthem possessed discretion in the administration of the Plan is belied by its own position in response to Defendants' instant motions. For example, as discussed in greater detail *infra*, Plaintiff takes the position that "the Plan's terms, considered as a whole in light of applicable law, <u>require</u> the claim at issue to be paid using Fair Health." (Advanced Opp., 13) (citing TAC, ¶ 52); *see also* Advanced Opp., 15 ("Being that the Plan does not state that Medicare data will be used, Fair Health is the <u>only remaining applicable standard</u>."); Advanced Opp., 15 (arguing that multiple provisions of the Plan, when read together, "<u>obligates</u> the Plan to pay Fair Health values for claims like the one at issue here").

Additionally, even if Anthem did have some level of discretion in claim pricing, I find that the type of discretion alleged is insufficient to make it a proper party. Critically, "courts have found that a party exercises control over the administration of benefits if it possesses the <u>final authority to authorize or disallow a claim for benefits under the plan</u>." *Wolff v. Aetna Life Insurance Company*, No. 19-01596, 2020 WL 1637938, at *4 (M.D. Pa. Apr. 2, 2020). As discussed in greater detail *infra*, the TAC simply alleges that to the extent that Anthem was responsible for claim pricing, it was limited to "the local Blue Cross Blue Shield plan's non-participating provider fee schedule/rate"; "the pricing arrangements required by applicable state or federal law"; "based on billed charges"; "the pricing used if the healthcare services had been obtained within the Anthem Blue Cross service area"; or, "a special negotiated price." (TAC, ¶ 40.) Indeed, Plaintiff's briefing, as well as the allegations of the TAC, confirm that Anthem was bound by the confines of the Plan's terms. (*See* Advanced Opp., 6) ("Claims by non-participating providers outside of the coverage area are priced using one of several methodologies, in turn, forcing Anthem to use discretion regarding the provision of benefits under the Plan <u>even if it is just limited to following the Plan's</u>

terms.") (emphasis added). In that regard, "[w]hen a plan or policy requires the performance of an act of ...administration in a specific manner, then ERISA's fiduciary duties are not implicated." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013). Further, to the extent that Plaintiff alleges that Anthem's discretion was limited to selecting the payment methodology, as opposed to authorizing or disallowing a claim, this role is merely ministerial, akin to claims processing and calculation. *Confer*, 952 F.2d at 39 (finding that "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles."). While Plaintiff alleges that Anthem had to "decide" how the claim would be priced, I find that the purported availability of multiple pricing schedules does not establish the type of discretion needed for a showing that Anthem is a proper party, *i.e.*, final authority to authorize or disallow a claim for benefits under the Plan. Instead, the terms of the Plan required Anthem to perform its limited pricing obligations in a specific way—without actual final authority to authorize the claim. (*See* Advanced Opp., 8.)

In this same connection, I also emphasize Plaintiff's failure to reconcile other critical provisions of the Plan which strengthen Anthem's position that it lacked final authority over the administration of benefits. For example, the Plan dictates that as Plan administrator, Central takes sole responsibility for funding the Plan and paying benefits, while Anthem provides administrative claims payment services and does not assume financial risk as to any claims. (*See* ECF No. 20, Ex. A at 15 at 1) ("The benefits described [in the Plan] . . . are funded by [Central] who is responsible for their payment. [Anthem] provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims."). Further, the Plan specifies that Central is "the named fiduciary . . . authorized to control and manage the operation and administration of the Plan." (*Id.* at 102.) Indeed, while Plaintiff stresses that Anthem is a "co-

14

fiduciary," it fails to address that according to the Plan, Anthem will only be considered a fiduciary "to the extent performance" of its "obligations constitute fiduciary obligations under applicable law." (*Id.*) Nor does Plaintiff confront the fact that Central, as fiduciary, "has the duty and <u>full discretionary authority</u> to determine eligibility for benefits and to interpret and apply the terms of the Plan, including making any factual determinations." (*Id.* at 103) (emphasis added).

Lastly, to the extent that Plaintiff vaguely relies on allegations that Anthem is a co-fiduciary under the Plan and that, in reviewing an appeal submitted by Advanced, Anthem overturned the initial decision, those same allegations were also considered in the Prior Opinion. With respect to Anthem's status as a co-fiduciary, I explained that according to the Plan, Anthem will only be considered a fiduciary "to the extent performance" of its "obligations constitute fiduciary obligations under applicable law." (Prior Opinion, 9-10.) In addition, as it relates to Anthem's role in the claims appeal process, I previously found that

> Plaintiff also implies in its brief that Anthem exercised discretion by responding to appeals and paying out additional reimbursements in response. ECF No. 23 at 10 ("The Amended Complaint also alleges . . . that Anthem responded to appeals, including by paying additional (albeit insufficient) amounts."); ECF No. 19 ¶¶ 29-31, 33-36. But, such allegations, <u>even taken as true, do not sufficiently plead that Anthem possessed decision-making relevant to the requisite element of control or discretion. Rather, they merely demonstrate that Anthem engaged in "purely ministerial tasks, such as claims processing and calculation," which without more, does not establish that Anthem "exercised any discretionary authority or responsibility in administration of the [P]lan.</u>" *Confer v. Custom Engineering Co.*, 952 F.2d 34, 39 (3d Cir. 1991).

(Prior Opinion, 8) (emphasis added). Accordingly, because the TAC does not raise any additional factual allegations to correct the deficiencies found in the Prior Opinion, I find that Anthem is not a proper party to this case.

       *ii.*   *Horizon*

Like Anthem, Horizon submits that it is neither the Plan nor the Plan administrator. (Horizon Moving Br., 18.) Horizon was also not M.S.'s employer or an entity with any discretion over or control of the Plan. (*Id.*) Rather, Horizon describes its role "as a conduit between [Plaintiff] and Anthem that performed ministerial claims processing tasks as the Host Blue." (*Id.* at 17.) According to Horizon, it "merely interacts with providers in New Jersey and transmits claims information to Anthem to determine the amount of reimbursement under the Plan." (*Id.*) Simply put, Horizon claims that no well-pleaded allegations exist in the TAC "supporting or even suggesting that Horizon possessed any discretion or control over administration of the Plan." (*Id.* at 19.) And, without any discretionary control over administration of the Plan, Horizon maintains, it is not liable under 29 U.S.C. § 1132(a)(1). (*Id.* at 18) (citing, among others, *Atl. Neurosurgical Specialists, PA v. Anthem Blue Cross and Blue Shield*, No. 20-10415, 2021 WL 4148149 (D.N.J. Sep. 10, 2021)). I agree with Horizon's position.

In factually similar cases, courts in this District, and elsewhere, have found "that Blue Cross Blue Shield's 'hosts' do not constitute proper defendants under § 502(a)(1)(B)." *Atl. Neurosurgical Specialists*, No. 20-10415, 2021 WL 4148149, at *4 (citing *Est. of Kenyon v. L&M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627 (D. Conn. 2019)). Courts look to what discretion, if any, the Plan vests in a "host." *Est. of Kenyon*, 404 F. Supp. 3d at 633. Even claim administrators with some discretion have been excluded as appropriate defendants under § 502(a)(1)(B) absent control over appeals by members. *Id.* The "defining feature" of a proper defendant under § 1132(a)(1)(B) is "[e]xercising control over the administration of benefits," with a focus on the entity's role in that determination. *Evans*, 311 F. App'x at 558-99. Indeed, the Court finds the recent decision in *Advanced Orthopedics & Sports Med. Inst., P.C. v. Horizon Heatlhcare*

*Servs., Inc.*, No. 21-12397, 2022 WL 993329, at *3 (D.N.J. Apr. 1, 2022), to be particularly persuasive. In that case, which also involved Plaintiff and Horizon, the court considered similar claims against Horizon arising out of its role as Host Blue for Anthem and its member. *Id.* at *3. The court found that Plaintiff had not demonstrated why Horizon is a proper party under § 502(a)(1)(B), and as such, it dismissed the complaint against it. In doing so, the court reasoned that the factual allegations of the complaint merely established that Horizon (1) set the pricing tables that the plan administrator could discretionarily use as a reference in determining the amount of benefits it will pay; and (2) administratively processed and paid the patient's claim at the direction of the plan administrator. The court found that "[a]bsent from the Complaint are any details involving who solicited the prior authorization, who accepted the authorization, the medium in which the authorization was received, and the specific provisions under the Plan that govern prior authorization." *Id.* Similarly, the court noted that the complaint's allegations that the plan administrator "delegated responsibility" to Horizon to make benefit determinations or that Horizon "exercised control over the administration of benefits," also lack factual support. *Id.* (citing *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 523 (D.N.J. 2019). Critically, the court also emphasized the express language of the plan, which lacked any reference to Horizon, let alone its delegation of authority or control to Horizon. *Id.*

Here, Plaintiff admits that Horizon's "involvement in the administration of benefits under the Plan is not as direct as Anthem's." (Advanced Opp., 11.). Indeed, Plaintiff points only to conclusory allegations that Horizon "did in fact control the administration of benefits under the Plan," claiming that Horizon priced claims, reviewed appeals, interacted and contracted with the other Defendants, and arranged a "special negotiated price" as the Blue Cross Blue Shield licensee in the region where the services were provided. (*Id.* at 10-11.) However, the TAC also confirms

that (1) Central, not Horizon, issued the explanations of benefits in this matter, and (2) Anthem, not Horizon, actually adjudicated Advanced's appeals of the claims payments. (TAC, ¶ 21; 53-61.) And, although Plaintiff claims that the TAC alleges "far more," with respect to Horizon's role than the complaint in *Advanced Orthopedics v. Horizon*, I disagree. Most notably, while the complaint in *Advanced Orthopedics v. Horizon* alleged that Plaintiff had received prior authorization *from Horizon* for the patient's back surgery, the TAC, here, alleges that Plaintiff received prior authorization for M.S.'s back surgery *from Anthem*. Moreover, notwithstanding the factual allegations related to Horizon's role in setting the pricing tables that the plan administrator could discretionarily use as a reference in determining the amount of benefits it will pay, I find that the TAC, like the complaint in *Advanced Orthopedics v. Horizon*, provides minimal factual allegations to support the conclusory allegation that Horizon controlled the administration of benefits under the Plan. In fact, as the court found problematic in *Advanced Orthopedics v. Horizon*, the express language of the Plan lacks any reference to Horizon. At best, Plaintiff alleges merely that Horizon performed ministerial tasks in serving as the conduit between Advanced and Anthem. Courts have consistently concluded that the performance of such ministerial tasks does not subject a person or entity to a claim for benefits under ERISA. *See*, *e.g.*, *Wolff v. Aetna Life Ins. Co.*, No. 19-01596, 2020 WL 4754253, at *5 (M.D. Pa. Aug. 17, 2020) (citing *Edmonson*, 725 F.3d at 413); *Mehra v. Pfizer Ret. Comm.*, No. No. 11–3854, 2013 WL 52880088, at *8 (D.N.J. Sept. 17, 2013) (for purposes of determining whether a person is a proper party to a claim seeking benefits due under ERISA, "allegations and facts showing merely ministerial tasks . . . without any showing that [the defendant] had discretion on how to administer the plan, would be insufficient to establish fiduciary status"); *Hocheiser v. Liberty Mut. Ins. Co.*, No. 17–6096, 2018 WL 1446409, at *7 (D.N.J. Mar. 23, 2018). Thus, I find that Horizon is not a proper party.

### 2.  *Failure to State a Claim for Benefits Under § 502(A)(1)(B) of ERISA*

Next, Central argues that the TAC does not adequately state a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) in Count I. Under § 502(a)(1)(B), a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see Manning v. Sanofi–Aventis, U.S. Inc.*, No. 11–1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B)."). In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right. *See, e.g.*, *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018).

Specifically, on its motion, Central argues that although the TAC cites to, and quotes, various portions of the Plan, nowhere does it specifically allege which of the Plan's provisions were actually violated when adjudicating M.S.'s claim. In that regard, Central contends that, as with Plaintiff's previous complaints, the TAC does not reference any provision of the Plan that entitles it to additional benefits. Rather, Central claims that Plaintiff merely insists, without any supporting basis, that the amount reimbursed was not the proper amount under the terms of the

Plan. I disagree, however, finding that the newly included allegations meet the minimal pleading standards of *Twombly* and *Iqbal*.

With respect to Count I, the TAC advances two theories for entitlement to benefits under § 502(a)(1)(B). (Advanced Opp., 13.) First, Plaintiff claims that the reason the TAC does not reference a particular provision of the Plan is because the Plan includes only vague terms and lacks any "discernable standard" or payment schedule. (*Id.* at 12-13.) In this regard, Plaintiff essentially argues that it is impossible to identify a "specific" provision. (*Id.*) At the outset, the Court is unpersuaded by Plaintiff's first theory, because Advanced provides no legal support for the notion that the Plan was so vague and ambiguous that it is somehow relieved of the law's requirement to identify a specific provision demonstrating that it was wrongfully denied benefits.

Nevertheless, I find that under Plaintiff's second theory, the TAC has sufficiently identified a provision of the Plan to state a claim for benefits under § 502(a)(1)(B). Specifically, Plaintiff argues that the Plan's terms related to covered services rendered outside the service area by non-participating providers, considered in their totality, require the claim at issue to be paid using FAIR Health.[3] (*Id.* at 13.) And, because the amounts paid by Defendants fell "well below" FAIR Health pricing calculations, Plaintiff asserts it is entitled to additional benefits.

In support of this second theory, Plaintiff alleges that, according to the Plan, covered services outside the coverage area, like the ones at issue here, are paid based on pricing from the

---

[3]    Although none of the parties adequately explain FAIR Health, it appears from Horizon's website that it "is a national independent, not-for-profit company established following the New York Attorney General's office review of out-of-network reimbursement methodologies." (*See* Horizon Website, Ex. 1 of Certification of Robert J. Norcia, Esq. in Support of Horizon's MTD ("Norcia Cert.").) Further, "Fair Health promotes transparency in health care reimbursements and provides consumers with a mechanism to estimate the cost of out-of-network services." (*Id.*) Specifically, FAIR Health "relies on a database of billions of billed medical and dental services." (*Id.*) In accordance with that database, "[c]harges for a particular service are arranged from low to high, and percentiles are assigned to each based on the full range of reported charges for a particular service in a specific geographic area." (*Id.*)

local Host Blue, *i.e.*, Horizon, or pricing arrangements required by applicable state law. (*Id.* at 13-14.) In this connection, Plaintiff alleges that local law requires Horizon to post an explanation for its out of network reimbursement policy on its website. (TAC, ¶ 47.) Specifically, according to Plaintiff, Horizon previously priced out of network reimbursements based on the Ingenix Database, which was developed and promulgated by UnitedHealthcare, a competing health insurance company and claims administrator. (*Id.* at ¶ 43.) However, several litigations were brought against UnitedHealthcare, Horizon and other insurers, based on the allegation that the Ingenix Database was improperly designed. (*Id.* at ¶¶ 43-44.) One such suit in New Jersey resulted in a settlement that required Horizon to discontinue use of the Ingenix Database. (*Id.* at ¶ 44.) In addition, Plaintiff alleges that the terms of the settlement included, among other things, injunctive relief requiring Horizon to "update its public website and its member portal to include general information regarding the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers." (*Id.*) According to Plaintiff, Horizon has since posted an explanation for its out of network reimbursement policy on its website, along with two primary fee schedules used to determine out of network reimbursement rates: (1) Medicare and (2) FAIR Health. (*Id.* at ¶¶ 44-45.) Critically, Plaintiff further alleges that the fee schedule provided on Horizon's website, which states that either Medicare or FAIR Health data will be used to calculate payment, instructs members to consult their coverage documents to determine which methodology is applied. (*Id.* at ¶ 45.) According to Plaintiff, however, the Plan confirms that if Medicare data is to be used, the Plan would be updated to reflect as much. (Advanced Opp., 15) (citing TAC, ¶¶ 54-55.) Because the Plan does not state that Medicare data will be used, Plaintiff alleges that FAIR Health is the only remaining applicable standard. (*Id.*)

To summarize, taking the Plan's provisions together, Plaintiff alleges that the Plan informs members and providers that: (1) "non-participating out of service area providers will be paid based on the local Host Blue's 'non-participating provider fee schedule/rate;'" (2) "the payment will be consistent with obligations imposed by local law;" (3) local law dictates that Horizon post an explanation for its out of network reimbursement policy on its website; (4) Horizon's New Jersey website explains that non-participating providers will be paid using a fee schedule based on a percentage of values determined by either Medicare or FAIR Health; (5) the Plan states that when determining reimbursement using information from the Centers for Medicare and Medicaid Services ("CMS"), the claims administrator will update such information no less than annually; and (6) the Plan does not state that out of network providers will be paid based off information from CMS, nor has the Plan been updated to reflect as much. (TAC, ¶ 48.) Thus, Plaintiff avers that FAIR Health values must be the prevailing methodology. (*Id.* at ¶ 52.)

Further, while the Prior Opinion noted that Plaintiff had failed to allege that Defendants "acted in contravention of [any specific] procedures for determining" benefits, "what amount Plaintiff should be entitled to under those provisions," or even "how the pertinent provisions entitle [it] to additional compensation," I find that the TAC remedies those flaws. (Prior Opinion, 18) (citing *Robinson v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 6258881, at *4 (D.N.J. Nov. 30, 2018)). In that connection, Plaintiff alleges that (1) M.S. is enrolled in the Plan, (2) M.S. received medical services in New Jersey (*i.e.*, outside of the service area), (3) Horizon is the Blue Cross Blue Shield Association's licensee in New Jersey, (4) Horizon serves as the Host Blue for the medical services rendered to M.S., and (5) Central should have delegated pricing of the claims at issue to Horizon as the Host Blue and local plan, which based on local law, should have determined payment under FAIR Health. (TAC, ¶ 81.) According to Plaintiff,

however, Central failed to do so, and as a result, the amounts paid by Defendants "fell well below FAIR Health pricing calculations." (*Id.* at ¶¶ 81-83.) Accordingly, based on the low threshold required to satisfy the *Twombly*/*Iqbal* standard, I find that Plaintiff has sufficiently pled, in Count I, a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) against Central.

## B.   Counts II, III, and IV: Claims Seeking Injunctive Relief Under Section 502(a)(3) of ERISA

Next, the Court addresses Counts II, III, and IV of the TAC, which assert claims for injunctive relief under 29 U.S.C. § 1132(a)(3). Section 502(a)(3) of ERISA provides that "[a] civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 502(a)(3) thus authorizes equitable relief directly to a participant or beneficiary to redress any act or practice which violates any provision of ERISA, including a breach of the statutorily created fiduciary duty of an administrator. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993).

### 1.   *Counts III and IV: Breach of Fiduciary Duty*

First, with respect to Counts III and IV,[4] which assert fiduciary duty claims against Defendants, I find that these claims should be dismissed as to Horizon and Anthem, because

---

[4]        In Count IV, Plaintiff asserts a fiduciary duty claim under 29 U.S.C. § 1132(a)(3)(B) for "other appropriate equitable relief." *See Bussiculo v. Babcock Power, Inc.*, 13-07192, 2014 WL 6908771, at *3 (D.N.J. Dec. 8, 2014) (noting that under ERISA § 502(a)(3)(B), a plan participant may have a cause of action for a breach of fiduciary duty). Indeed, the Supreme Court has held that a beneficiary who is denied benefits under an ERISA plan may seek equitable restitution under § 1132(a)(3)(B) for a breach of fiduciary duty. *See Great–West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 213 (2002) (noting that equitable restitution is available to a plaintiff under § 1132(a)(3)(B)); *Michaels v. Breedlove*, No. 03–4891, 2004 U.S.App. LEXIS 25165, at *5–6 (3d Cir. Dec. 8, 2004) (same); *Fox v. Herzog*, No. 01–1827, 2005 U.S. Dist. LEXIS 36414, *9 (D.N.J. Dec. 27, 2005) (same).

Plaintiff has not plausibly alleged that they are fiduciaries under ERISA § 404(a)(1)(B). To state a viable claim for breach of fiduciary duty, Plaintiff must first adequately allege that Horizon and/or Anthem are, indeed, Plan fiduciaries. *Sweda v. Univ. of Penn.*, 923 F.3d 320, 328 (3d Cir. 2019) (stating that the elements of a claim under 29 U.S.C. § 1104 (a)(1)(B) are "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan."). Under federal law, "the linchpin of fiduciary status[,]" in the context of unpaid ERISA benefits, "is discretion, and discretion is a fact specific inquiry." *Hocheiser*, No. 17-6096, 2018 WL 1446409, at *7 (citing *Curcio v. John Hancock Mut. Life. Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994)). In that connection, a "plaintiff must sufficiently allege" that a defendant had the discretion to "determin[e] [his or her] eligibility for benefits." *Mehra v. Pfizer Retirement Committee*, No. 11–3854, 2013 WL 5288008, at *8 (D.N.J. Sept. 17, 2003) (quoting *Curcio*, 33 F.3d at 233).

Here, it is of little consequence that Plaintiff has alleged, in conclusory fashion, that Anthem is a "co-fiduciary" under the Plan. Rather, as discussed in detail *supra*, Plaintiff has failed to sufficiently allege, beyond conclusory allegations, that Horizon and Anthem possessed <u>discretion</u> to administer the Plan beyond application of "purely ministerial tasks." *Confer*, 952 F.2d at 39; *see Edmonson*, 725 F.3d at 422 ("When a plan or policy requires the performance of an act of . . . administration in a specific manner, then ERISA's fiduciary duties are not implicated."). As such, Counts III and IV are dismissed as to Horizon and Anthem only, but remain as to Central.[5]

---

[5] I note that, collectively, Defendants also argue that Plaintiff's § 502(a)(3) claims should be dismissed because they are duplicative of Count I. Specifically, Defendants argue that while Plaintiff may pursue a breach of fiduciary duty claim in conjunction with a claim for recovery of benefits under ERISA § 502, Count III should be dismissed because it is not based on an injury "separate and distinct" from the denial of benefits. Defendants further contend that even if Plaintiff could identify a separate injury, the relief it seeks is legal in nature, *i.e.*, monetary damages in an amount equaling the difference between the charges Plaintiffs billed and what was actually paid by the claims' administrators. I disagree with Defendants' position, however, for substantially the same reasons as stated in the Prior Opinion, *i.e.*, Plaintiff's breach of fiduciary duty claim is based on separate conduct and injury. For example, as to conduct, Plaintiff alleges that "Defendants contractual agreements between one another constitute a breach of the duty of loyalty as

### 2. *Count II: Denial of Full and Fair Review*

Finally, I find that Count II, which asserts a claim for denial of full and fair review, is dismissed as to all Defendants because it is not an independent cause of action. In Count II, Plaintiff avers that Defendants violated 29 U.S.C. § 1133 by refusing to (1) provide specific reasons for the denial of underpayments, (2) provide the specific rule, guideline or protocol relied on in making the decision, (3) describe any additional material or information necessary to perfect the claims, and (4) provide M.S. documents and information relevant to Defendants' denial of the claims. (TAC, ¶ 100.)

> Plaintiff is correct that § 503 of ERISA requires that every employee benefit plan must:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. However, in *Miller v. Am. Airlines, Inc.*, the Third Circuit observed that "[a]lthough [ERISA] § 502 provides the private right of action to bring a claim to recover benefits due, § 503 sets forth the basic requirements governing ERISA plans." 632 F.3d 837, 850–51 (3d Cir.2011). Thus, while complying with § 503 may be "probative of whether the decision to deny benefits was arbitrary and capricious," § 503 itself does not provide an independent cause of action. *See Miller*, 632 F.3d at 851; *see also Blakely v. WSMW Indus.*, No. 02–1631, 2004 U.S. Dist. LEXIS 14957, 2004 WL 1739717 (D.Del. July 20, 2004) ("Section 1133, which mandates certain

---

said arrangements benefit the fiduciaries at the expense of the beneficiary." (TAC, ¶ 111.) Further, Plaintiff references the "special negotiated price," alleging that "by Horizon agreeing to make a 'special negotiated price' available to Anthem, and in turn, Central Garden, the Defendants have engaged in a self-dealing transaction which benefits the fiduciaries at the expense of the beneficiary." (*Id.* at ¶ 116.) I also highlight that Central does not raise any independent arguments for dismissal of Count III.

claims procedures for beneficiaries under ERISA, does not create a private right of action.") (citing *Ashenbaugh v. Crucible, Inc.*, 854 F.2d 1516, 1532 (3d Cir.1988)); *Galman v. Sysco Food Servs. of Metro N.Y., LLC*, No. 13-7800, 2016 WL 1047573, at *5 n.4 (D.N.J. Mar. 16, 2016), *aff'd* 674 Fed.Appx. 211 (3d Cir. 2016) (noting that § 503 does not create an independent right of action for obtaining plan documents); *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. Mar. 16, June 25, 2015), *aff'd* 650 Fed.Appx. 106 (3d Cir. 2016) (dismissing a claim for failure to provide a full and fair review under § 503 with prejudice); *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 13-3057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013) (same).

As 29 U.S.C. § 1133 does not confer a private right of action, Plaintiff's claim against Defendants for failure to provide a full and fair review (Count II) is dismissed with prejudice.[6]

## IV.   **CONCLUSION**

For the reasons set forth above, the motion filed by Horizon is **GRANTED**, the motion filed by Anthem is **GRANTED**, and the motion filed by Central is **GRANTED** in part and **DENIED** in part. First, Count II is dismissed as to all Defendants because 29 U.S.C. § 1133 does not confer a private right of action. As to Horizon's and Anthem's motions, the remaining claims are dismissed because (1) neither Horizon nor Anthem is a proper party to Plaintiff's claim in

---

[6]   I also note that Plaintiff's claim in Count II constituted an unpermitted amendment under Fed. R. Civ. P. 15. Plaintiff's FAC only sought unpaid benefits from Central and Anthem for violating their legal obligations under ERISA by purportedly under-reimbursing M.S. and his assignees, and further, that by under-reimbursing M.S. and his assignees, Central and Anthem breached their fiduciary duties under ERISA by making claims determinations that violated the Plan's terms. The Court's Prior Opinion dismissed these claims without prejudice, providing Plaintiff leave to amend the FAC within thirty days. Plaintiff's leave to amend, however, was limited to cure deficiencies in the claims that were previously dismissed without prejudice by the Court—Plaintiff was no permitted to add any new claims. *See Obataiye v. Lanigan*, No. 14-5462, 2018 WL 3019887, at *11 (D.N.J. June 18, 2018); *see also Williams v. Hebbon*, No. 09-2103, 2012 WL 1033357, at *2 (D.N.J. Mar. 27, 2012) (finding that "to the extent Plaintiff seeks to assert new claims, some against new defendants, such proposed amendment goes beyond the scope of this Court's prior Order and will not be permitted").

Count I for benefits due under 29 U.S.C. § 1132(a)(1)(B), and (2) neither Horizon nor Anthem is a fiduciary for purposes of Counts III and IV. Finally, as to Central, its motion is denied as to Counts I, III, and IV. Accordingly, Counts I, III, and IV remain only as to Central.

Dated: October 21, 2022                              /s/ Freda L. Wolfson
                                                     Freda L. Wolfson
                                                     U.S. Chief District Judge